UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES L. RADERS,                                    CASE NO. 6:18-cv-00711-PGB-EJK

    Plaintiff,

vs.

MICHAEL FRANTZ, FRANTZ
COMMUNITY INVESTORS, LLC, and
FRANTZ VENTURES, LLC,

    Defendants.
_____/

## JOINT FINAL PRETRIAL STATEMENT

The Parties, JAMES L. RADERS ("Raders" or "Plaintiff", and MICHAEL FRANTZ, FRANTZ COMMUNITY INVESTORS, LLC, and FRANTZ VENTURES, LLC ("Defendants"), pursuant to the Court's Case Management and Scheduling Order (Doc. # 47), hereby submit this Joint Final Pretrial statement.

1. **Basis of the Court's Subject-Matter Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a)(1) in that the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs, and the lawsuit is between citizens of different States.

This Court has ruled by Order dated September 14, 2018 that this Court has personal jurisdiction over Defendants under the Florida long-arm statute and that

the exercise of such personal jurisdiction does not offend traditional notions of fair play and substantial justice.

2. **A Concise Statement of the Action**

This action involves the claims by Plaintiff that Defendants took actions, including actions involving fraud, deception and theft, to cause Plaintiff to turn over to Defendants the sum of $2,502,212.90 by wire transfers in March, 2016 and convert and use such funds and other funds delivered by Plaintiff to Defendants for unauthorized purposes.

Plaintiff has brought this action against Defendants claiming Fraud in the Inducement, Breach of Contract, Conversion, Civil Theft, Unjust Enrichment and Piercing of the Corporate Veil. Defendants deny the allegations.

3. **A Concise Statement of Each Party's Position**

   a. *Plaintiff's statement of the case*:

   Defendants undertook a plan of fraud and deception to get Plaintiff (Raders) to liquidate and fund to Defendants all of Raders' retirement accounts and life insurance proceeds, including telling Raders not to withhold taxes which would be due as a result of such liquidation since Defendants would invest Raders funds in qualified historic tax credits that would offset any taxes due. Defendants' deception included lying to Raders about Defendant, Mike Frantz', net worth (claiming an over

$27,000,000 net worth) and representing to Raders that Defendants were in control of substantial real estate deals that would allow Rader's funds to be invested in high-earning projects, including a project in Melbourne Florida that Raders was interested in becoming involved.

In fact, Defendant(s) were being sued by numerous persons and entities and the claimed real estate deals were in default. None of the debt defaults or lawsuits were included in Defendants' financial statement, which was supplied to Raders in order to confirm that Frantz had a substantial net worth. Defendants' representations, to Raders, of financial wealth and stability were lies.

Defendants conned Raders into giving Defendants money with the understanding and agreement that Defendants would use Raders funds for approved legitimate real estate investments. Instead, Defendants stole Rader's funds and used all of it for unauthorized and illegitimate purposes, including paying for Defendants' own personal expenses.

Moreover, Defendants admittedly defaulted under the Investment Agreement provisions, which was entered into between Raders, Frantz, and Frantz Community Investors, and confirmed the manner in which Raders' funds would be handled.

b. *Defendant's statement of the case*:

Defendant Michael Frantz and Plaintiff James Raders are childhood friends. Over the years, Raders has sought investment opportunities through Frantz, a longtime businessman. In March 2016, after making a number of investments through Frantz, including one that Raders has characterized as successful, Raders voluntarily chose to invest a substantial sum of money through Frantz. Raders understood that this was an investment and that, like any other investment, its outcome was not guaranteed. Raders also understood that his money was to be invested in various real estate projects, not any one in particular, pursuant to Frantz's business discretion.

Unfortunately, the investment project that Raders' had invested money into failed catastrophically due to one real estate development in particular. The failure of the investment project was not Frantz's fault whatsoever but rather failed despite Frantz's best efforts to make it successful. The failure of the real estate project resulted in the loss of Raders' funds, as well as the loss of Frantz's own investment money. At no time did Frantz mislead Raders prior to Raders' decision to make his investment, nor did Frantz ever misuse Raders' investment money.

4. **List of Each Exhibit with Notation of Each Objection**

   See Exhibits 1-3 to this filing.

5. **List of Each Witness by Name Only With Notation of (A) Likelihood the Witness will Testify and (B) Each Objection to the Witness's Testifying**

   See Exhibits 4-7 to this filing.

6. **List of Each Expert Witness With Notation of (A) the Substance of the Testimony and (B) Each Objection to the Witness's Testifying**

   a. *Plaintiff's Expert*

   Shari L. Lutz, CPA/CFF, ASA
   Shari Lutz & Associates, LLC
   4610 S. Ulster Street, Suite 150
   Denver, CO 80237

   Shari L. Lutz, CPA/CFF, ASA will testify as to the amount of damages and amounts owed from Defendant Michael Frantz to Plaintiff James Raders.

   b. *Defendants' Expert*

   None.

7. **A Breakdown of the Type and Amount of Monetary Damages**

   (i)  Investment Agreement damages: $4,798,378

   Principal = $3,103,306.80 x 10% simple interest = $310,336.60/year or $25,861.33/month.

   Payments in 2016 from Defendants beginning in April and stopping at the end of August totaled $115,000 leaving a balance of past due interest of $14,306.67 at the end of August, 2016.  No payments of interest since

that time, equates to a total past due simple interest due at the end of 2021 (not compounded) = $1,695,071.30.

Thus, total of principal and interest due, without including any payments of collection or bankruptcy representation = $4,798,378 due as calculated on the most Defendant-favorable calculation under the Investment Agreement.

Added to this amount will be default interest at the increased rate of 45% plus costs of collection, all of which will be calculated following the determination of liability under the Investment Agreement.

(ii)  <u>Florida Civil Theft Statute Damages:</u>  $7,506,638.70

Under the theft statute, the statutory amount includes treble damages of the principal amount stolen from Plaintiff. Therefore, if the amount subject to theft includes only the amount funded in 2016 ($2,502,212.90), then the treble damages would equal $7,506,638.70.

8. **A List of Each Deposition Offered in Lieu of Live Testimony, Unless the Deposition is Only For Impeachment**

<u>See</u> Exhibits 8-9 to this filing.

9. **A Concise Statement of Each Admitted Fact**

a. In 2016, Raders and Frantz discussed opportunities for investments, including a property in Melbourne, Florida – called The Mansion.

b. On March 8, 2016, Raders wired $2,482,453.04 to the Frantz Ventures, LLC bank account (#1186).

c. On March 17, 2016, Raders wired $19,759.92 to the Frantz Ventures, LLC bank account (#1186).

d. On March 7, 2016, RSM sent Raders an e-mail advising "Mike Frantz asked Dean to forward the attached to you," and this e-mail contained – as an attachment – a Promissory Note.

e. Frantz did not sign the document delivered in the March 7, 2016 e-mail from RSM to Raders.

f. Frantz at some point delivered to Raders a personal Financial Statement, dated July 15, 2016, showing a net worth of over $27 million.

g. The Financial Statement was either prepared or reviewed by Frantz.

h. Frantz signed the Financial Statement, on behalf of himself, as well as signed on behalf of his then-wife, Susan Frantz.

i. Raders was unaware that Frantz signed the Personal Financial Statement on behalf of Susan Frantz and that she did not sign the document herself, though Frantz did have Susan Frantz's authorization to sign the document on her behalf.

j. In signing the Financial Statement, Frantz attested to the following: "I/We, the undersigned, do hereby certify that the within financial report is a true and correct statement of my/our financial condition . . . ."

k. According to the Financial Statement, Frantz – along with Susan Frantz – represented their net worth was $27,770,655.

l. In litigation styled <u>Paul Anthony Baxter v. Michael D. Frantz and Susan Frantz</u>, filed in the Circuit Court of Cook County, Illinois, a Final Judgment had been entered against Frantz on February 10, 2016, for $257,536.40.

m. To date, the <u>Baxter</u> judgment has not been paid off.

n. Susan Frantz wrote checks on the Frantz Ventures bank account for personal expenses, including for residential garbage service, residential cleaning services, therapy, her daughter's car payments, personal residences utility bills, a new residential home furnace, dental expenses, therapy and student loans, among other things.

o. Prior to Raders' funds being delivered to the Frantz Ventures account at the end of February, 2016, the account was overdrawn by over $21,893.

p. In the month of March, 2016, Frantz used almost all of Raders' money and the balance remaining at the end of month was just $273,101.57.

    q. At some point after making his investments in March 2016, Raders began demanding that Frantz provide documentation and/or information regarding where Raders' funds had been disbursed.

    r. Frantz executed an Investment Agreement on September 16, 2016 on behalf of FCI and himself, individually, and Raders countersigned it as well.

    s. The Investment Agreement purports to have an effective date of March 7, 2016, as it states, in relevant part, "THIS INVESTMENT AGREEMENT (this "Agreement"), is made as of September 16, 2016 to be effective as of March 7, 2016 (the "Effective Dates")."

    t. The Investment Agreement states that the base investment principal amount that Raders had paid over to Frantz totaled $3,103,306.80.

    u. Raders has never received any documentation reflecting an interest in any real estate projects that Frantz was developing (other than the one Iowa City, Iowa South Cedar Properties, which was prior to the 2016 funding).

10. **A Concise Statement of Each Agreed Principle of Law**

    a. To prevail on a claim for fraud in the inducement, a plaintiff must provide: (1) a false statement of a material fact; (2) that the defendant knew or should have known was false; (3) that was made to induce the plaintiff to enter into a contract; and (4) that proximately caused injury to

the plaintiff when acting in reliance on the misrepresentation. <u>Bradley Factor, Inc. v. United States</u>, 86 F. Supp. 2d 1140, 1146 (M.D. Fla. 2000).

b. Under Florida law, to state a cause of action for breach of contract, the plaintiff must allege: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." <u>Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC</u>, No. 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *7 (M.D. Fla. Sept. 4, 2020).

c. A valid contract is generally composed of four basic elements: offer, acceptance, consideration, and sufficient specification of essential terms. <u>Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.</u>, 313 So. 3d 625, 630 (Fla. 4th DCA 2021).

d. In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent. <u>Fla. Desk, Inc. v. Mitchell Int'l, Inc.</u>, 817 So. 2d 1059, 1060–61 (Fla. 5th DCA 2002). Pursuant to Fla. Stat. § 812.04,

> (1)   A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
> (a)   Deprive the other person of a right to the property or a benefit from the property.
> (b)   Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

In order to establish an action for civil theft, the claimant must prove that a conversion has taken place and that the accused party acted with criminal intent. Transcapital Bank v. Shadowbrook at Vero, LLC, 226 So. 3d 856, 864 (Fla. 4th DCA 2017). Such intent must be proven by clear and convincing evidence. Westinghouse Elec. Corp. v. Shuler Bros., Inc., 590 So. 2d 986, 988 (Fla. 4th DCA 1991). The Florida Supreme Court has interpreted section 812.04 to require only the "intent to deprive," rather than the "intent to permanently deprive." State v. Dunmann, 427 So. 2d 166 (Fla. 1983).

e. Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time." Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1291 (11th Cir.2001). Thus, in order to state a claim of conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property. Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013); Edwards v. Landsman, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

f. To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or

retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006).

g. Generally, the corporate veil will not be pierced absent a showing of improper conduct. Dania Jai–Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla.1984). Under this standard, it must be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. Seminole Boatyard, Inc. v. Christoph, 715 So. 2d 987, 990 (Fla. 4th DCA 1998). Three factors must be proven by a preponderance of the evidence:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

11. **A Concise Statement of Each Issue of Fact**

   a. *Plaintiffs' Position*

   Plaintiff asserts that there are facts in evidence that meet the requirements for each count in Plaintiff's Complaint as the same are outlined in the Plaintiff's Motion for Summary Judgment.

> Whether, and to what extent, Plaintiff is entitled to damages for the claims brought against Defendants.
>
> ### b. *Defendants' Position*
>
> Defendants contend that the facts in evidence demonstrate that Defendants acted appropriately and that Plaintiff has not met his burden of proof as to all elements of any of his claims.

12. **A Concise Statement of Each Issue of Law**

    None, at this time.

13. **A List of Pending Motion or Other Unresolved Issue:**

(i)     Plaintiff's Motion for Summary Judgment, filed on September 3, 2021 (Doc. # 62).

(ii)    Motions in Limine, to be filed by December 27, 2021 deadline.

14. **A Statement of Usefulness of Further Settlement Discussions**

The parties have not been able to agree on settlement terms, and do not request any formal alternative dispute resolution measures at this time. The possibility of settlement appears unlikely at this time.

**(iii)   Attached Exhibits**

   a. Proposed Jury Instructions (Ex. 10 to this filing)

   b. Proposed Verdict Form (Ex. 11 to this filing)

   c. Proposed Voir Dire questions (Ex. 12 to this filing)

## LOCAL RULE 3.06(b) CERTIFICATION

Counsel for the parties have conferred in good faith to: (1) discuss the possibility of settlement; (2) stipulate to as many facts and issues as possible; (3) examine all exhibits and exhibit substitutes or documents and other times of tangible evidence to be offered by any party at trial; (4) exchange the names and addresses of all witnesses; and (5) prepare a pretrial statement.

DATED:  December 20, 2021

Respectfully submitted,

| *Attorneys for James L. Raders* | *Attorneys for Michael Frantz; Frantz Community Investors, LLC; and Frantz Ventures, LLC* |
|---|---|
| /s/ Krista N. Cammack | /s/ Mark D. Belongia |
| Krista N. Cammack, Esquire | Mark D. Belongia, Esquire |
| Florida Bar No. 104718 | *Pro Hac Vice* |
| kcammack@wickersmith.com | belongiam@jbltd.com |
| Peter Bartoszek, Esquire | Brian C. Langs, Esquire |
| Florida Bar No. 1015519 | *Pro Hac Vice* |
| pbartoszek@wickersmith.com | langsb@jbltd.com |
| WICKER, SMITH, O'HARA, McCOY & FORD, P.A. | JOHNSON & BELL |
| 390 N. Orange Ave., Suite 1000 | 33 W. Monroe Street, Suite 3700 |
| Orlando, FL 32801 | Chicago, IL 60603-5404 |
| Phone: (407) 843-3939 | Phone: (312) 370-0770 |
| Fax: (407) 649-8118 | Fax: (312) 372-9818 |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed the foregoing with the Clerk of Court via CM/ECF on December 20, 2021.  I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

> */s/ Krista N. Cammack*
> Krista N. Cammack, Esquire
> Florida Bar No. 104718